In re David Roger GOOD, Debtor.

PATTISON BROS. MISSISSIPPI RIVER TERMINAL, INC., Plaintiff,

v.

David Roger GOOD, United States Internal Revenue Service and Connie J. Good, Defendant,

Larry Eide, Trustee, Intervenor.

Bankruptcy No. L–87–01577W.
Adv. No. L–89–0219W.

United States Bankruptcy Court, N.D. Iowa.

Sept. 7, 1990.

Childers & Vestle, P.C., Cedar Rapids, for debtor.

John W. Holmes, Holmes & Holmes, Waterloo, Iowa, for Pattison Bros.

S. Hollis Fleischer and Charles Hurley, Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

Larry Eide, Pappajohn, Shriver, Eide & Nicholas, Mason City, Iowa, Trustee.

Janet G.L. Reasoner, U.S. Trustee's Office, Cedar Rapids, Iowa, Asst. U.S. Trustee.

## ORDER RE: MOTION FOR CONTINUANCE

MICHAEL J. MELLOY, Chief Judge.

The Defendant, David Roger Good, has filed a motion to continue the trial set for October 23, 1990. That motion came on for telephonic hearing on September 4, 1990. The following persons participated in the telephonic hearing: Movant and Debtor, David Roger Good, through his attorney Michael Vestle; Pattison Bros. Mississippi River Terminal, Inc., through its attorney

John Holmes; Internal Revenue Service, through its attorney S. Hollis Fleischer; and the Chapter 11 Trustee, Larry Eide. Several attempts were made to contact attorney Frances Gohlke, who represents Defendant Connie J. Good, in order that she may participate in the telephonic conference. However, Ms. Gohlke was not available at any of the telephone numbers which had been given to the conference operator. Accordingly, the Court determined that the hearing would go forward without Ms. Gohlke's participation.

The Defendant, David Roger Good ("Good") filed a motion to continue the trial which is currently scheduled to commence on October 23, 1990. Essentially, Good sets forth two grounds for the continuance. First, Good argues that the civil case involving he and Pattison Bros. Mississippi River Terminal, Inc. ("Pattison") should be continued pending trial of criminal charges which have been lodged against him. The criminal case, originally scheduled to commence trial in late August, has been continued to November 14, 1990. In addition, Good alleges that he needs additional time to conduct discovery and prepare for trial of this case. Pattison has vigorously resisted the motion to continue. The Internal Revenue Service and the Trustee indicated at the hearing that they were taking no position on the motion to continue.

### Background

A review of the court file, including the attachments to the resistance to the motion to continue, as well as statements of counsel, revealed the following facts which the Court deems relevant to resolution of this controversy.

Prior to August, 1989, Pattison determined that Good had embezzled substantial sums of money from Pattison. Pattison filed a complaint alleging that the embezzlement exceeds five million dollars. Good denies the allegations. One of the matters to be tried in this adversary complaint is whether there was an embezzlement, and if so, how much.

On August 11, 1989, Pattison filed a petition in the Iowa District Court in and for Chickasaw County, Law No. CL8-8-89, setting forth a number of allegations against Good, including the claim of the embezzlement. In addition, Pattison alleged that Good owned several parcels of real estate in northeast Iowa. Pattison alleged that Good purchased real estate with embezzled funds and asked that a lien be imposed upon the real estate for the benefit of Pattison. Pattison also sought and obtained an attachment against the real estate and the crops being grown upon that property. It is the understanding of the Court that the crops were later harvested under the supervision of Pattison and the Iowa District Court.

Good filed a Chapter 11 petition in this court on October 16, 1989. The issues raised in the Iowa District Court action were almost immediately joined in this bankruptcy proceeding. Pattison filed various motions to lift stay, dismiss the case, and appoint a trustee. Pattison incorporated the allegations set forth in the Iowa District Court action into those motions. Those motions were initially resolved by appointing a Chapter 11 Trustee and continuing the hearings on the other motions pending resolution of this adversary complaint. Pattison then filed this complaint, again setting forth substantially the same allegations as those set out in the Iowa District Court action.

The Court understands that the issues to be tried in this complaint essentially involve whether David Good embezzled money, and if so, how much; whether any debt owed to Pattison by David Good is nondischargeable; whether farm real estate owned by David Good was purchased with funds embezzled from Pattison; whether a constructive trust should be imposed upon the farm real estate for the benefit of Pattison; and whether Good's homestead was purchased with embezzled funds so as to prevent Good from claiming the homestead as exempt. In addition, Good filed an amended answer to the complaint which alleges various affirmative defenses, including the "clean hands" doctrine and the statute of limitations. The answer also contains a counterclaim in which Good and the Trustee allege that the attachment Pat-

tison obtained in the Iowa District Court in August, 1989, constitutes a preferential transfer under § 547 of the Bankruptcy Code.

Concurrently with the civil proceedings in the Iowa District Court and the bankruptcy court, state and federal authorities were undertaking criminal investigations against Good. The Court is somewhat unclear about the nature of the criminal investigations being conducted by the federal authorities, although, there has been reference to the possibility that violation of federal income tax laws may be one of the areas under investigation. To date, the United States Government has filed no charge against Good.

The state authorities have investigated Good in connection with Pattison's allegations that Good embezzled a substantial amount of money. Those investigations have been spurred on by Pattison and its attorney, who has supplied substantial information to the state authorities. Eventually, Pattison determined that the state was moving too slowly. As a result, Pattison filed a citizen's complaint in Chickasaw County against David Good accusing him of 67 counts of theft in the first degree in violation of § 714.1(2) of the Iowa Criminal Code.

The Chickasaw County attorney withdrew from the case and requested that the Iowa Attorney General appoint a special prosecutor to review the results of the investigation to determine if criminal charges should be filed and to take such further action as may be appropriate. Subsequently, Mike Wallace, an assistant attorney general, appeared on behalf of the state of Iowa in the Chickasaw County criminal proceeding. Mr. Wallace eventually determined that venue would more appropriately lie in Fayette County, Iowa. As a result, the charges in Chickasaw County were dismissed and new charges were filed in Fayette County, Iowa. The state's trial information which is attached as exhibit "F" to Pattison's resistance to the motion to continue, indicates that the state is pursuing criminal charges against Good on nine counts of alleged embezzlement from Patti-

son. The criminal case was originally set for trial on August 29, 1990, and as indicated above, was continued in an order dated August 13, 1990, to November 14, 1990.

Mr. Good is represented in the bankruptcy proceedings by attorney Michael Vestle of the law firm of Childers & Vestle, P.C. Good is represented in the criminal proceedings by attorney William Scherle of the firm of Hansen, McClintock & Riley, of Des Moines, Iowa.

Early in the bankruptcy case, the issue of whether Good would provide testimony at a meeting of creditors, and at a deposition scheduled by Pattison or whether he would assert his Fifth Amendment rights was raised. Good's attorneys represented that Good wanted to testify but that he wanted some protection against use of any such testimony in the state criminal investigation. Consequently, Good filed a motion with this Court on November 9, 1989, in which he requested a protective order. In that motion, Good requested the Court grant a protective order which would prohibit Pattison's attorney or any other person associated with Pattison, the Trustee, or any other party who participated in the deposition of Good, from turning over to the County Attorneys for Fayette or Chickasaw County, Iowa, or other state investigative authorities, copies of a transcript of that deposition or transcript of the bankruptcy court trial which was then set for November 28, 1989. The court conducted a hearing on the motion upon notice to all interested parties in this bankruptcy proceeding, as well as notice to the County Attorneys of Chickasaw and Fayette County. Both Mr. Vestle and Mr. Scherle participated in the hearing on behalf of Good. The Court issued an order on November 17, 1989, granting the request for protective order. The protective order prohibited the parties from disseminating either the transcript of the deposition or a transcript of the November 28, 1989, trial to the Chickasaw and Fayette County attorneys and the investigative authorities from the state of Iowa. Good specifically indicated that he had no objection to the transcripts being delivered to the United States Attorney as

part of the federal criminal investigation. The protective order did not prohibit any person attending the deposition or trial from discussing Good's testimony with the state authorities and specifically did not prohibit any person who attended the deposition from testifying in any subsequent criminal proceeding involving Mr. Good about statements made at the deposition and trial, assuming such testimony would otherwise be admissable under the State of Iowa Rules of Evidence.

It is the understanding of the Court that the deposition of David Good, taken by Pattison, did go forward as scheduled. The transcript of that deposition is several hundred pages long. The trial scheduled for November 28, 1989, eventually was continued and the issues raised in that trial were incorporated into this adversary complaint.

Since the issues raised in the adversary complaint were closely related to the pending motions which had previously been filed in the bankruptcy case, the complaint was set for trial on January 16, 1990, with the other pending bankruptcy matters. On December 28, 1989, the Internal Revenue Service filed a motion to continue. That motion came on for hearing on January 2, 1990. Essentially, the Internal Revenue Service argued that it needed additional time to investigate the status of Good's tax liability to the IRS and to conduct discovery on the issues raised in the Pattison complaint. The Pattison complaint may impact upon the IRS if the request for imposition of a constructive trust is granted. Pattison has taken the position that any property upon which a constructive trust is imposed is not property of the estate and therefore not available to pay claims of creditors, of which the IRS is by far the largest. The motion to continue filed by the IRS was granted.

On March 6, 1990, the Court conducted a status and scheduling conference with all parties to this proceeding. The Court conducted extensive discussion with counsel as to the time necessary to prepare for trial. Pattison argued for an early trial date. The IRS and Good both argued that this was a complex case and they needed sufficient time to conduct discovery and prepare for trial. Both Good and the IRS indicated that they would be ready for trial by the fall of 1990. Accordingly, an order was entered on March 9, 1990, setting an October 23, 1990 trial date. A later preliminary pretrial conference and status conference were held on May 31, 1990, in which the Court set out additional deadlines. These deadlines included a discovery deadline of October 1, 1990, a September 15, 1990 deadline for exchanging of exhibits, an October 3, 1990 deadline for filing of a pretrial statement, and an October 9, 1990 date for a final pretrial conference. Good's motion to continue requests that the October 23, 1990 trial date be continued and the other deadlines set forth in the order of May 31, 1990 be extended.

## A. WHETHER THE CRIMINAL OR CIVIL TRIAL SHOULD GO FIRST.

The primary ground relied upon for the motion to continue is the argument that the criminal trial involving David Good should precede the civil case. Good argues that if the civil trial goes first he may be required to invoke his privilege against self incrimination under the Fifth Amendment to the United States Constitution. He asserts that he should not have to choose between his Fifth Amendment rights and his right to put forth an effective and adequate defense to the civil complaint. Good argues that the civil case should be continued until the criminal case has been tried.

Good cites a number of cases for the proposition that the civil proceeding may be stayed until a concurrent criminal case is concluded. *See Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir.1979); *Securities & Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C.Cir.1980), *cert denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *Afro–Lecon, Inc. v. U.S.*, 820 F.2d 1198 (Fed.Cir.1987); *Peden v. United States*, 512 F.2d 1099, 1103, 206 Ct.Cl. 329 (1975) ("We believe it has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is .warming up or under way").

Those cases do recognize, however, that there is no constitutional requirement that a civil case be stayed or continued pending completion of the criminal proceeding. *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).

The cases cited above generally hold that the Court must balance the rights of the parties in determining whether a stay of the civil proceedings should be entered. *See Afro-Lecon, Inc. v. U.S.,* 820 F.2d 1198, 1206 (Fed.Cir.1987). In performing this balancing test, the Court must weigh the strong interest of the individual who is the subject of the concurrent proceedings against any possible prejudice to the opposing party which may result from a delay in the civil proceedings. In *Wehling v. Columbia Broadcasting System,* 608 F.2d 1084, 1089 (5th Cir.1979), the court determined a three year stay of the civil proceeding pending the expiration of the applicable statute of limitations for possible criminal charges was appropriate.

If the "traditional" balancing of the interests of the parties were the only factors before the Court in this motion to continue the result would be fairly easy. Although the Court has not conducted an evidentiary hearing, the uncontroverted facts before the Court show which way that balance would normally tip. The criminal case brought by the State of Iowa against Good arises out of the same set of facts as this civil proceeding. In addition, the fact that criminal charges have been filed and a trial has been set indicates that criminal prosecution is not an illusory prospect.

The delay of the civil trial until after the November 13, 1990 criminal trial date would not be an unreasonable delay if the Court balanced only the interests of the parties. It is hard to see how Pattison would be prejudiced by a three or four month delay. The property which is the subject of the constructive trust action is under the control of the Trustee who is administering the estate. The case has been on file for one year, which is not an excessive period of time for a case of this complexity and magnitude. In addition, the cases cited by Good were all discussed and considered by the Court in the ruling of November 17, 1989. While Pattison certainly had the right, and arguably the obligation, to push vigorously for the filing of criminal charges, it certainly must have been aware of the fact that the criminal charges could delay the trial of its civil complaint.

The factor which complicates the decision in this case is one of the grounds relied upón by Good to obtain the continuance of the criminal trial. Good filed the motion to continue the criminal trial and alleged several grounds in support of the continuance. In particular, the motion stated that the criminal case was extremely complex and that the Defendant, Good, needed additional time to adequately prepare for trial; the state's attorney had a conflict and consented to the continuance; and finally, that the charges filed against Good involved the same transactions that were set out in the adversary complaint filed in the bankruptcy court, and that the adversary complaint was scheduled for trial in the bankruptcy court on October 23, 1990. The motion to continue went on to state that the criminal trial would be duplicitous in effort and cost to that currently being expended in the bankruptcy court.

The order entered by the Honorable James L. Beeghly, judge of the Iowa District Court for Fayette County, stated that the motion to continue came on for hearing before the court and that both attorneys participated. The order went on to state "both [Mr. Scherle, representing Good, and Mr. Wallace, representing the state] agreed the trial in this case should be continued until after a bankruptcy hearing is concluded. The delay is expected to expedite trial in this case." The order went on to grant the motion to continue and set a trial date subsequent to the October 23, 1990 trial of this adversary complaint.

At the telephonic hearing held on the motion to continue presently before this Court, the attorney for Pattison requested the opportunity to conduct an evidentiary hearing at which time he would call as witnesses the Assistant Attorney General handling the criminal case for the State of

Iowa, attorney Scherle, and Judge Beeghly. However, attorney Vestle, who represents Good in this matter, has acknowledged what was said and decided at the motion to continue the criminal matter. At the telephonic hearing on this matter, attorney Vestle specifically stipulated that at the hearing on the motion to continue the criminal trial, Good's attorney for the criminal case, Mr. Scherle, represented to Judge Beeghly that the bankruptcy trial should go first and that it would be more expeditious to try the bankruptcy case prior to the criminal case. In spite of this stipulation, attorney Vestle continues to argue that it will be difficult to put forth an adequate defense on behalf of Good in the civil proceeding if the criminal case is not tried first. Mr. Scherle did not participate in the telephonic hearing on the motion to continue and therefore there was no explanation given as to why he believed the civil case should go first while his co-counsel handling the bankruptcy case was representing to this Court that the criminal case should go first.

■ In analyzing this problem, the Court could arguably rely upon the doctrine of judicial estoppel. That doctrine is explained in the case of *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 472–473 (6th Cir.1988) as follows:

> The judicial estoppel doctrine protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 598 (6th Cir.1982); *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987). The purpose of the doctrine is to protect the courts "from the perversion of judicial machinery." *Edwards*, 690 F.2d at 599. Courts have used a variety of metaphors to describe

the doctrine, characterizing it as a rule against "playing 'fast and loose with the courts,'" *Scarano v. Central R.R.*, 203 F.2d 510, 513 (3rd Cir.1953), "blowing hot and cold as the occasion demands," *Allen v. Zurich Insurance Co.*, 667 F.2d 1162, 1167 n. 3 (4th Cir.1982), or "hav[ing] [one's] cake and eat[ing] it too," *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1177 (D.S.C.1974). Emerson's dictum that "a foolish consistency is the hobgoblin of little minds" cuts no ice in this context.

This Court is reluctant to rely too heavily on that doctrine since it is unclear as to whether judicial estoppel has any validity in the Eighth Circuit. *See Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 n. 6 (8th Cir.1987). To the extent judicial estoppel is a valid doctrine in this circuit, this is clearly a case where the doctrine would be applicable. The Defendant, David Good, has asserted one position in a state court judicial proceeding, and was successful in that position, and now attempts to assert a totally contrary position in this court.[1] Under the doctrine of judicial estoppel, Good is estopped from asserting the position in this proceeding that the criminal trial should precede the civil trial.

The Court believes, however, that applying the traditional balancing of interest tests as outlined in *Afro-Lecon, Inc. v. U.S.*, *supra*, leads to the same conclusion. The privilege against self incrimination is a privilege designed principally to protect the potential criminal defendant from admissions that may be damaging to him or her in a criminal proceeding. In this case, David Good's criminal attorney is the person who made the decision and representation to the Iowa District Court that the civil case should go first. The reason for this decision has been left to speculation because, as indicated previously, no explanation was presented. However, this Court sees a number of possible reasons for that

---

1. The Court would be less troubled by this whole scenario if Good had brought the inconsistency in positions to the Court's attention. The Court finds it troubling that the matter had to be raised in Pattison's resistance. Under the circumstances, it would have been very helpful to have Attorney Scherle participate in the telephonic hearing on the motion to continue to explain his position in this matter. It is also troubling that Good's attorneys seem to be taking the position that there is nothing wrong with playing fast and loose with the courts and that these types of conflicting representations just represent good advocacy by Good's lawyers.

decision. These would include the fact that attorney Scherle may have concluded that the privilege already had been waived, as asserted by Pattison, since Good participated in a lengthy deposition involving the same facts; the possibility that it may be easier to strike an agreeable plea arrangement if the civil case is resolved prior to the criminal proceeding; or, that under the particular facts of the case the trial strategy may be such that Good will have no choice but to testify and waive his Fifth Amendment rights in the criminal proceeding.

The courts have recognized that there may be important and valid reasons why a criminal defendant may wish a civil case to go first. *See Peden v. United States*, 512 F.2d 1099, 1104 ("certainly a CSC hearing that is in the nature of a dress rehearsal for a criminal trial, in which all the Government witnesses testify and are cross-examined at length, but the defendant to be does not, is potentially a big lift to the criminal defense and could well be decisive in securing an acquittal, if anything could"). While the Government is not the plaintiff in this civil proceeding, it can be assumed that substantially all the witnesses who will testify in the criminal case will be called as witnesses in the trial of this adversary complaint since the same operative facts give rise to both cases. Hence, Good likely will have a preview of what evidence and testimony he faces in the criminal arena.

In conclusion, it is the opinion of this Court that the decision to proceed with the civil case has been made by the criminal defense attorney and that decision should outweigh the other factors in the balancing test. The Court does note that from prior hearings in this case and a review of the fee application of the firm of Childers & Vestle, P.C., that there has been consultation between Mr. Scherle and the bankruptcy attorneys as to strategy. It is the criminal defense attorney that should have the paramount interest in protecting Good's Fifth Amendment rights. There is nothing in this record to indicate that the criminal defense attorney has changed his position that it would be in the best interests of his client, as a criminal defendant, to have the civil case go first. Accordingly, the motion to continue on the ground that the criminal case should go first will be denied.

### B. TIME NECESSARY FOR ADDITIONAL TRIAL PREPARATION.

 Good also argues in support of the motion for continuance that he needs additional time to prepare for trial. The Court, however, finds this argument to be unconvincing and not a legitimate ground for continuance. The trial in this case was set after consultation with all parties. Good and the Internal Revenue Service were essentially given the time that they requested to prepare for trial. The Court was advised that Good could be ready for trial by October 23, 1990, and that all necessary discovery could be concluded. The Court does not believe that there has been a showing of any unusual or exceptional circumstances in this case which would warrant the continuance requested.

It should also be noted that the most recent fee application filed by the firm of Childers & Vestle, P.C., which includes all services through July 31, 1990, shows that substantial time and effort have been expended in preparation for this trial. More than $80,000 of fees and expenses have been incurred since the case was filed in October, 1989, to and including July 31, 1990. The detailed time records show that the majority of that time has been spent in interviewing witnesses and preparing this adversary case for trial. The Court believes that there has been adequate resources and time available to Good to prepare for trial and that there has been no good cause shown as to why the additional trial preparation cannot be completed in the approximately seven weeks remaining between this date and the trial of this case.

### ORDER

IT IS THEREFORE ORDERED that the motion to continue filed by the defendant, David Roger Good, is denied.

DONE AND ORDERED.